UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN WILLIAMS,<br><br>             Plaintiff,<br><br>       v.<br><br>LAWRENCE LIVERMORE NATIONAL<br>SECURITY, LLC BENEFITS AND<br>INVESTMENT COMMITTEE, et al.,<br><br>             Defendants. | Case No.  24-cv-07593-VC<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART WILLIAMS'S<br>MOTION FOR SUMMARY<br>JUDGMENT; DENYING<br>DEFENDANTS' CROSS-MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 68, 69 |

Williams's motion for summary judgment is granted as to the question of whether the

defendants breached their fiduciary duty under ERISA; the motion is denied as to the question of

remedy. The defendants' cross-motion for summary judgment is denied. This order assumes the

reader's familiarity with the facts of the case, the parties' arguments, and the applicable law.[1]

**Breach of Fiduciary Duty.** This claim arises from statements made to Williams by

Belisa Miller and Carol Christopher, two LLNS employees who advised him on his benefits after

he became disabled after three decades of employment with LLNS. Williams had the choice

---

[1] As discussed at the hearing, Williams initially submitted a motion for judgment pursuant to
Rule 52 but styled his reply brief as a summary judgment opposition brief after the defendants
submitted a motion for summary judgment pursuant to Rule 56. Given the parties' confusion and
the fact that that there are considerable gaps in this factual record, particularly relating to the
question of remedy, the cross-motions are being treated as motions for summary judgment under
Rule 56.

between retiring and enrolling in one or both of two disability programs offered by LLNS. Based on the advice Miller and Christopher gave him, Williams opted to go on disability (as opposed to retiring) and chose to enroll in both programs: LLNS's traditional long-term disability program and the Defined Benefit Eligible Disability program. Specifically, Miller and Christopher led Williams to believe that enrolling in the second disability program—the defined benefit disability program—would result in him receiving pension credit for his time on disability, thus increasing his monthly pension payments when he ultimately retired. This turned out to be wrong—Williams did not receive pension credit for his time on disability.

To prevail on an ERISA claim for breach of fiduciary duty based on misrepresentations, a plaintiff must establish that: (1) the defendant was an ERISA fiduciary and was acting as a fiduciary; (2) the defendant made a material misrepresentation to the plaintiff; and (3) the plaintiff reasonably relied on the misrepresentation to their detriment. *See In re Computer Sciences Corp. Erisa Litigation*, 635 F. Supp. 2d 1128, 1140 (C.D. Cal. 2009), *aff'd sub nom. Quan v. Computer Sciences Corp.*, 623 F.3d 870 (9th Cir. 2010).

As discussed at the motion to dismiss stage, the actions of employees who perform fiduciary functions can be "imputed to the delegating fiduciary." *See Williams v. Lawrence Livermore National Security, LLC Benefits & Investment Committee*, 2025 WL 1829034, at *2 (N.D. Cal. July 2, 2025) (quoting *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1028 (9th Cir. 2021)). The defendants contend that Miller and Christopher's actions cannot be imputed to the defendants because Miller and Christopher were not acting as fiduciaries when they made the statements at issue to Williams. But Williams and his wife had one-on-one conversations with Miller and Christopher, respectively, during which Miller and Christopher advised Williams on which benefits he should choose and why. *See Bafford*, 994 F.3d at 1028 (discussing "individualized consultations with benefits counselors" as an example of a fiduciary function); *see also Morris v. Aetna Life Insurance Co.*, 2023 WL 3773656, at *1 (9th Cir. June 2, 2023) ("Conveying information about the likely future of plan benefits is a fiduciary act.") (citation

modified). Moreover, Christopher's title of Retirement Counselor, as well as her later role as Delegate of Plan Administrator, strongly suggests that Christopher in particular was entrusted with discretion, "one of the central touchstones for a fiduciary role." *Bafford*, 994 F.3d at 1028. Thus, as a matter of law, Miller and Christopher were acting as fiduciaries when they advised Williams about how to proceed.[2]

The defendants next argue that if an ERISA plan fiduciary makes an error in counseling a beneficiary (as opposed to making an intentional misstatement), the error cannot give rise to a fiduciary breach claim unless it is accompanied by ambiguous plan language on the same topic. For this proposition, they rely on *In re DeRogatis*, 904 F.3d 174, 195 (2d Cir. 2018), and *Dutra v. Recology, Inc.*, 2021 WL 4722959, at *6 (N.D. Cal. 2021). To the extent those cases stand for the proposition that an unintentional misrepresentation must always be accompanied by ambiguous plan terms to give rise to a breach of fiduciary duty, they are most likely wrong. As a matter of logic, if you erroneously tell someone that their pension credits will accrue while on disability, your statement can still be misleading (and materially so) even if the plan documents are clear. More fundamentally, ERISA imposes an affirmative responsibility on fiduciaries to "convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). If a fiduciary advises a beneficiary to take a course of action based on the fiduciary's misunderstanding of the plan, and the beneficiary takes that course of action to their detriment, it's unclear why it should matter whether the advice was intentionally or inadvertently erroneous, or whether the advice was clearly contrary to the plan or just potentially contrary to the plan. Perhaps that's why the leading case in the Ninth Circuit— *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 720 (9th Cir. 2021)—says nothing to suggest that an unintentional misstatement is actionable as a breach of fiduciary duty only if it's accompanied

---

[2] ERISA recognizes "named fiduciaries" and "functional fiduciaries." 29 U.S.C. §§ 1102(a), 1002(21)(A). Miller and Christopher were acting as functional fiduciaries.

by ambiguous plan language.[3]

Even if the defendants were right that the erroneous advice given to Williams is only actionable as a breach of fiduciary duty if the plan language relating to that advice was ambiguous, it does not matter. The plan language is embarrassingly ambiguous—to the point that the failure to fix it seems like a breach of fiduciary duty in itself. The definition section of the pension plan at issue says that a member accrues hours of credited service for the period they are enrolled in the defined benefit disability program, and that hours of credited service are equivalent to hours of service for the performance of duties. *See* LLNS Defined Benefit Pension Plan (Dkt. No. 21-1) §§ 2.33(b)(i), 2.34(d). But a later section of the pension plan—one that describes how retirement income is calculated—says that hours of credited service earned while enrolled in the defined benefit disability program do not count towards calculating pension benefits. *See id.* § 5.01(e)(i). The direct contradiction between these two provisions creates an obvious ambiguity.

The defendants respond that the first provision—the one that says that the member accrues hours of credited service while enrolled in the defined benefit disability program—should be understood as referencing benefits other than pension benefits (such as health benefits) that might be measured with reference to service credit. That is ridiculous. The pension plan is called the "Defined Benefit Pension Plan." It does not discuss any other type of benefit. If the language were intended to reference some other benefit provided through some other plan, there would have been no reason to put it in the pension plan. Nor would there be reason for anyone reading the pension plan to think that when the pension plan says a member accrues service credit when enrolled in the defined benefit disability program, it is referencing anything other than accrual of service credit for pension purposes.

---

[3] Although an ambiguity in plan language is not required to show that an unintended misstatement constitutes a breach of fiduciary duty, the presence or absence of an ambiguity is relevant to the type of remedy that may be available. *See Gabriel v. Alaska Electrical Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014).

4

Finally, the defendants assert that Williams has not shown detrimental reliance because he has not submitted evidence that he went through the plan documents and that "reliance is not reasonable where the participant failed to consult the written plan documents." Defs.' Cross Mot. for Summary Judgment (Dkt. No. 69) at 11. This is a considerable overstatement of the authority cited by the defendants. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). *Curtiss-Wright* is not a misstatement case and does not speak to when reliance is or is not reasonable. *See id.* Whether reliance is reasonable is a context-specific inquiry and not, as the defendants make it out to be, a categorical duty that ERISA imposes on plan beneficiaries. The relevant context here is that Williams was advised by LLNS representatives entrusted with counseling employees about their benefits in the face of a written plan document with hopelessly ambiguous language. On this record, there is no genuine dispute of material fact that Williams reasonably relied to his detriment on Miller and Christopher's statements.[4]

For all these reasons, Williams is entitled to summary judgment on his claim for breach of fiduciary duty.

**Entitlement to Equitable Relief.** The question of what monetary relief Williams is entitled to depends on whether the Court would be enforcing a promise based on equitable estoppel or making Williams whole through the remedy of surcharge. With the equitable estoppel remedy, the goal is to place the plaintiff "in the same position he would have been in had the representations been true." *See Gabriel v. Alaska Electrical Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011)). With the surcharge remedy, the goal is to place the plaintiff in the position he would have been in absent the misrepresentation. *See id.* at 957; *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975).[5]

---

[4] The defendants similarly overstate the authority in arguing that Williams cannot have reasonably relied on oral misstatements. They imply that such a requirement exists in the Ninth Circuit by citing *Warmenhoven*, which involved written representations. But *Warmenhoven* does not preclude claims based on oral representations. *See Warmenhoven*, 13 F.4th at 727.

[5] Williams also contends he is entitled to the remedy of reformation, which requires a mistake of

Williams appears to assume that the equitable estoppel remedy applies. To prove his entitlement to that remedy, Williams must satisfy the traditional requirements for equitable estoppel as well as three ERISA-specific requirements. *See Gabriel*, 773 F.3d at 955–57. The traditional requirements are:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Id.* at 955 (quoting *Greany v. W. Farm Bureau Life Insurance Co.*, 973 F.2d 812, 821 (9th Cir. 1992)). The requirements specific to ERISA are: (5) extraordinary circumstances; (6) ambiguous plan terms; and (7) that the representations constitute an interpretation rather than modification or amendment of the plan. *Id.* at 957 (citing *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir.1997)).

The defendants assert that the last two requirements are dispositive. But as discussed above, the pension plan was ambiguous because of its contradictory terms. For similar reasons, the representations by Miller and Christopher were an interpretation rather than a modification of the pension plan. *See Spink*, 125 F.3d at 1263 ("The equitable estoppel doctrine is founded upon a party's reasonable reliance on an interpretation of ambiguous Plan provisions."); *Greany*, 973 F.2d at 822 n.9 ("A plaintiff must first establish that the plan provision in question is ambiguous and the party to be estopped interpreted this ambiguity."). If a plan is clear, an erroneous reading of the plan modifies those terms. But if the plan contains ambiguous terms, there are, by definition, two (or more) plausible readings, and either reading is an interpretation rather than a modification. So the sixth and seventh requirements for imposing the equitable estoppel remedy do not help the defendants.[6]

---

fact or law, as well as evidence of the parties' true intent. *Gabriel*, 773 F.3d at 961. That is not an appropriate remedy here because there is no indication that the true intent of the defendants was to have the pension plan reflect the terms as Miller and Christopher initially represented them to Williams.

[6] It's also worth noting that "when ERISA plan language is ambiguous, it is to be construed in

Nevertheless, it's unclear whether Williams can prevail on an equitable estoppel theory because there is insufficient evidence to reach a conclusion on the second requirement, which relates to intent. Specifically, it's unclear whether Miller and Christopher acted with the intent to induce Williams to enroll in the defined benefit disability program or acted in a way that entitled Williams to believe that their intent was to induce him to enroll in the program. The parties' factual stipulation reflects that Miller told Williams he "must" enroll in the program and that doing so was critical for him to accrue credit that would increase his monthly pension. Stip. Facts (Dkt. No. 54) ¶ 2. Similarly, Christopher told Williams that he "should" enroll in the program. *Id.* ¶ 3. It may be that one or both of these statements are legally sufficient to conclude that Miller and Christopher had the requisite intent. Or it may be that a trial is needed to further examine Miller and Christopher's intent and Williams's reaction to the statements. At first glance, it seems likely that a trial would be required, because a statement like "you must do X" can sometimes reflect an intent to get the person to do X, and it can sometimes be a disinterested-but-helpful recommendation. But the parties have not addressed this issue sufficiently for the Court to be able to determine whether the intent requirement is satisfied. The question of whether a trial is needed to resolve this issue or whether it can be addressed as a matter of law on the current record can be briefed in advance of the pretrial conference and discussed at that conference.

Even if Williams is ultimately not entitled to recover on a theory of equitable estoppel, he would presumably be entitled to the remedy of surcharge. Proving entitlement to the surcharge remedy would only require Williams to show that the defendants' breach caused him harm. *See Gabriel*, 773 F.3d at 957–58. Williams asserts that, absent the misrepresentations, he would not

---

favor of the plan participant." *Gallen v. Liberty Life Assurance Co. of Boston*, 2024 WL 4751576, at *2 (C.D. Cal. Nov. 12, 2024) (collecting cases). This may not be directly relevant to the breach of fiduciary duty claim at issue here, but it does suggest that Williams should have been awarded the higher pension payments in response to his claim for benefits, and that the same result should be reached for any other beneficiaries who may have been denied service credit towards their pension for the time they were enrolled in the defined benefit disability program.

have enrolled in the defined benefit disability program, which caused him to incur tax liability that he would not have otherwise incurred and to take on financial liabilities that he would not have otherwise taken on. At the hearing, Williams explained that benefits received through the defined benefit disability program (which are taxable) are offset against benefits from LLNS's traditional long-term disability program (which are not taxable). In other words, Williams did not receive additional benefits by opting for the defined benefit disability program, but he paid more in taxes than he otherwise would have. However, there is no evidence in the record that explains how the two benefits are offset against one another. Moreover, it's unclear whether Williams's financial decision-making would have been different absent the misrepresentations. For example, his assertion that he paid his child's college tuition and purchased his home in reliance on a slightly higher level of pension benefits in the future seems dubious.

**Monetary Compensation.** Regardless of which remedy Williams may be entitled to, a trial is necessary to establish the amount of compensation he could get. If it turns out that Williams is only entitled to a surcharge remedy, there are questions about the decisions a reasonable person in Williams's position would have made absent the misrepresentations and how Williams was harmed relative to that counterfactual. If equitable estoppel applies, there are still holes in the record as to what the pension payments would have been if he received credit for his time enrolled in the defined benefit disability program. For instance, the largest component of Williams's proposed calculation (what he calls the Restoration Plan Benefit) is based on a 2017 estimate Williams generated from LLNS's benefits portal. Apart from the fact that the assumptions underlying the estimate are entirely opaque, further explanation is needed as to how the oral misrepresentations made by Miller and Christopher led Williams to believe he was entitled to the monthly amounts reflected on the 2017 estimate. There are also questions about the internal consistency of the assumptions Williams makes. For example, apart from listing a monthly amount for Restoration Benefits, the 2017 estimate also appears to list a monthly figure for the Defined Benefit (another component of Williams's pension) but Williams

chooses to ignore that figure and instead calculates what he believes he should receive as a monthly Defined Benefit using an entirely different set of assumptions. These questions, as well as other assumptions underlying Williams's calculations, can be explored at trial.

      **IT IS SO ORDERED.**

Dated: June 29, 2026

_____
VINCE CHHABRIA
United States District Judge

9